STATE EXAMINER AND INSPECTOR — AUTOMOBILE TAG AGENTS — AUDIT — AS PART OF AUDIT OF OKLAHOMA TAX COMMISSION OR BY ORDER OF THE GOVERNOR The previously issued Attorney General's Opinion, 7 Okl.Op.A.G. 116 (74-173) and 47 O.S. 22.30 [47-22.30](n) (1971) do not limit the authority of the State Examiner and Inspector in that he may audit at his discretion as a part of his duties in auditing the Oklahoma Tax Commission any tag agent appointed by the Oklahoma Tax Commission. Further, that the Governor of the State of Oklahoma does have authority to order an audit of the Oklahoma Tax Commission by the State Examiner and Inspector and in conducting the audit, the State Examiner and Inspector may audit tag agents when in his discretion he deems it necessary. The Attorney General is in receipt of your letter wherein you ask the following questions: "Does either Title 47 O.S. 22.30 [47-22.30](n) (1971), or your opinion of July 10, 1974, prohibit the Examiner and Inspector from making an annual audit of all tag agency accounts on his own motion? "Does 74 O.S. 212 [74-212] (1971), authorize the Governor to direct the Examiner and Inspector to audit all accounts of tag agents?" The opinion to which your first question refers, 7 Okl.Op.A.G. 116 (74-173), stated in its conclusion: "It is therefore the opinion of the Attorney General that your question should be answered in the negative in that 47 O.S. 22.30 [47-22.30](n) (1971) does not require an audit and inventory of all receipts, accounts and funds coming into the hands of a Tag Agent, but requires an audit by the State Examiner and Inspector of concessions and Motor License Agent and Tag Agent fees and other notary fees collected by such agent." This opinion was concerned only with the audit required by 47 O.S. 22.30 [47-22.30](n) (1971) which required an audit of those items in the opinion paragraph above referred to in the statute itself which is quoted below: "At the end of each fiscal year, the motor license agent and tag agent shall forward a complete financial statement covering all expenses and disbursements out of the concessions and motor license agent and tag agent fees and other notary fees collected by such agent to the County Treasurer of that county, the County Superintendent of Schools, and the State Examiner and Inspector. An audited statement and inventory shall be made by the State Examiner and Inspector each fiscal year, and as of the end of the day before a newly appointed motor license agent and tag agent assumes office." (Emphasis added) The above-quoted statute, however, does not prohibit the State Examiner and Inspector from conducting audits that could include the records of tag agents when in his discretion he deems it necessary. The early case of State, ex rel. Taylor v. Cockrell, 27 Okl. 630, 112 P. 1000 (1910), established that the State Examiner and Inspector acts within his constitutional authority independent of the Governor's office. In considering the question before the Court, concerning whether the State Examiner and Inspector could audit the records of a failed bank in the hands of the State Bank Commissioner, the Court stated in part, as follows at page 634: ". . . By Article V, Section 60 of the Constitution it was made mandatory upon the Legislature to 'provide by law for the establishment and maintenance of an efficient system of checks and balances between the officers of the executive department, and all commissioners and superintendents, and boards of control of state institutions, and all other officers entrusted with the collection, receipt, custody or disbursement of the revenue or moneys of the state whatsoever." The Court later stated at page 635: ". . . The State Examiner and Inspector shall have full power and authority for the various purposes named to examine books, papers, accounts, bills, vouchers and any other documents, or property of any or all of the aforesaid state institutions, all state officers and custodians of any county or state funds, . . ." Additionally, the Court concluded that the powers of the State Examiner and Inspector went beyond those records of the state officer that he is examining by stating at page 636 as follows: "It is contended that the State Examiner and Inspector, in making this examination, is confined to the books of the Banking Department upon which the Bank Commissioner or other officer of said department has made entries or record relative to such fund or assets received, disbursed or disposed of. If this be true, an examination of such department in respect to the funds and assets of a failed bank that have been or are being administered by said department could result in no practical benefit. The result would be a valueless farce, for the State Examiner and Inspector, being confined to such record as contained only entries made by the Bank Commissioner or the Banking Department, would have no way to determine whether they spoke the truth. Whilst all officers are presumed to be without official wrong, yet it was the evident intention of the framers of the Constitution to have such system of checks and balances as would bring about an inquisitorial examination for the protection of the people, so that there could be no hidden official wrong. These organic and statutory provisions should be given a reasonable construction, to carry out the spirit and evident purpose of the lawmakers, and not by a restricted or narrow construction leave one of the most important branches of the executive department without an examination by the expert accountant or state officer elected by the people of the state for such purpose. . . ." The Court went on to hold that the State Examiner and Inspector had the authority to make an examination of the defunct bank's records even if they had been returned to that bank in order to completely and adequately audit the banking commissioner's office. The thrust and philosophy of this decision is clear as it applies to your first question. The State Examiner and Inspector has the statutory duty to examine the books and accounts of the Oklahoma Tax Commission. In doing so he has the authority in his discretion to examine the books and accounts of any tag agent under contract with the Tax Commission whose duty it is to report to the Tax Commission taxes collected in licensing motor vehicles, boats, etc., as provided by law. If it were not so the people of the State of Oklahoma would not have an effective means to determine if the taxes to be collected by their government have been in fact properly accounted for. Your second question is primarily concerned with the authority of the Governor of the State of Oklahoma to direct the Examiner and Inspector to audit the accounts of tag agents in particular. In this regard, 74 O.S. 212 [74-212] (1971) provides in part as follows: "Duties and powers — Deputies — Cities and Towns may have books audited — Cost of examination . . . He shall examine the books and accounts of the state officers whose duty it is to collect, disburse or manage funds of the State, at least one each year. Whenever called upon to do so by the Governor, it shall be his duty to examine the books and accounts of any officer of the State, or any of his predecessors. . . ." (Emphasis added) As can be seen by the above-quoted section the Governor of this State may require the State Examiner and Inspector to examine the books and accounts of any officer of the State or any of his predecessors. Insofar as tag agents are independent contractors by statute and are not employees of the Oklahoma Tax Commission, as set forth in 47 O.S. 22.22 [47-22.22] (1971), these tag agents would not constitute officers of the State. Therefore, the Governor does not have authority to direct the State Examiner and Inspector to audit tag agents per se. The Governor may, however, direct the State Examiner and Inspector to audit the Oklahoma Tax Commission and in doing so is invoking the authority of the State Examiner and Inspector under the rationale employed in answering your first question. This authority once invoked may extend to tag agents when deemed necessary by the State Examiner and Inspector. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: The previously issued Attorney General's Opinion, 7 Okl.Op.A.G. 116 (74-173) and 47 O.S. 22.30 [47-22.30](n) (1971) do not limit the authority of the State Examiner and Inspector in that he may audit at his discretion as a part of his duties in auditing the Oklahoma Tax Commission any tag agent appointed by the Oklahoma Tax Commission. Further, that the Governor of the State of Oklahoma does have authority to order an audit of the Oklahoma Tax Commission by the State Examiner and Inspector and in conducting the audit, the State Examiner and Inspector may audit tag agents when in his discretion he deems it necessary. (JAMES H. GRAY) (ksg)